**Peter R. KACHANIS, Jr., Petitioner,**

v.

**DEPARTMENT OF the TREASURY, Respondent.**

**No. 99–3157.**

United States Court of Appeals, Federal Circuit.

May 9, 2000.

Catherine A. Sammartino, of Providence, Rhode Island, argued for petitioner.

James H. Holl, III, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With him on the brief were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, and Harold D. Lester, Jr., Assistant Director. Of counsel was Rafael Morell, Office of the General Counsel, Office of Personnel Management, of Washington, DC.

Before MAYER, Chief Judge, SCHALL, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

Peter R. Kachanis, Jr. petitions for review of the final decision of the Merit Systems Protection Board ("Board") sustaining the refusal by the Internal Revenue Service ("Agency") to restore Kachanis to full employment. *See Kachanis v. Department of Treasury*, No. BN0330970210-I-1 (Jan. 22, 1999). The Board concluded that the Agency properly afforded all rights owed to Kachanis by placing him on its reemployment priority list ("RPL") after Kachanis had recovered from various work-related injuries that lasted more than one year. We conclude that Kachanis properly presented his challenge to the validity of the regulations promulgated at 35 C.F.R. Part 330, but that the regulations reasonably interpret the expression of Congress' intent at 5 U.S.C. § 5181(b) (1994). We further conclude, however, that the Board did not adequately consider the prejudice Kachanis may have suffered from: (1) the Agency's delay in placing Kachanis on the RPL; (2) the Agency's failure to consider Kachanis for positions other than those at the Warwick, Rhode Island facility; and (3) the Agency's refusal to consider Kachanis for part-time as well as full-time work. Accordingly, we affirm-in-part, vacate-in-part and remand.

I.

Peter Kachanis served as a GS-12 Revenue Officer for the Internal Revenue Service office in Warwick, Rhode Island. On January 27, 1986, Kachanis suffered injuries in a car accident while on duty, including injuries to his back and neck. Based on his injuries, Kachanis was deemed compensable by the Office of Workers' Compensation Programs and removed from active duty. As of March 13, 1987, he began receiving disability benefits.

On May 28, 1995, Kachanis was determined to be fully recovered, and his benefits were terminated. On June 19, 1995, Kachanis submitted a written request that he be restored to duty and given priority consideration "for any position within the Service in the Rhode Island commuting area." Shortly thereafter, on June 30, 1995, the Agency imposed a hiring freeze with certain blanket exceptions.

Under 5 C.F.R. § 330.202(b), the Service was required to place Kachanis on the its reemployment priority list within 10 days of the request. The Agency, however, did not place Kachanis on the RPL until October 18, 1995, almost four months after the request was submitted by Kachanis. The Agency limited its consideration of Kachanis to positions only in Warwick, rather than the entire Rhode Island commuting area, declaring to Kachanis that "[y]ou may not be considered for any other locations." Kachanis was further considered only for full-time, rather than part-time, positions.

On November 15, 1996, the Agency implemented its Career Transition Assistance Plan ("CTAP") for bargaining unit employees, including Kachanis. The plan

was implemented pursuant to presidential memorandum. The declared intent of the plan is to "actively assist and empower its [the Agency's] surplus and displaced bureau employees to find other employment, either within the Federal Government, or in the private sector."

For two years, Kachanis remained on the RPL. He was never restored to any position with the Agency. The Agency considered Kachanis an external applicant, and due to the freeze did not conduct any external hiring for positions for which it deemed Kachanis as qualified. During this period, the Agency filled three other positions in the Rhode Island commuting area with internal hires.

On August 18, 1997, Kachanis appealed to the Board pursuant to 5 U.S.C. § 7701 and 5 C.F.R. § 330.209, contending that the Agency had violated its duty to return him to a comparable position under 5 U.S.C. § 8151 and 5 C.F.R. Part 353. On December 22, 1997, the chief administrative judge issued an initial decision reversing the Agency termination. The judge found that the Agency violated Kachanis's employment rights under the CTAP and under 5 U.S.C. § 8151(b)(2) and 5 C.F.R. § 353.301(b) and Part 330 when it assigned an internal Agency employee, Paul Howard, to a vacant position within the Agency while Kachanis was on the RPL. The judge then ordered the Agency to restore Kachanis to his former position, and awarded Kachanis back pay, interest, and adjustments to his retirement and health benefits. The judge also awarded Kachanis interim relief under 5 U.S.C. § 7701(b)(2)(A). The Agency complied with the order, and reinstated Kachanis as directed. The Agency then filed a petition for review of the initial decision with the full Board.

On January 22, 1999, the Board issued its opinion and order reversing the judge's initial decision. The Board based its order

on its interpretation of the Agency's CTAP. Specifically, the Board determined that under the restoration regulations, Kachanis was only entitled to priority consideration by being placed on the RPL. The Board also concluded that the CTAP did not afford Kachanis any further rights beyond those under the regulations, noting that "the purpose, scope, and definition sections of the IRS–CTAP do not on their face afford the appellant any special restoration rights." Although the CTAP affords special selection rights for certain categories of employees, the Board concluded, Kachanis did not qualify for any of these categories. The Board also denied Kachanis's cross-petition challenging the administrative judge's denial of Kachanis' request for an extension of time to conduct discovery.

On March 4, 1999, this court denied Kachanis's motion for a stay pending further judicial review. On March 5, 1999, the Agency again removed Kachanis from his position.

Kachanis now appeals the decision of the full Board.[1] Kachanis argues that the regulations at 5 C.F.R. Part 330 are fundamentally inconsistent with Congress' mandate for priority at 5 U.S.C. § 8151(b)(2). Kachanis also contends that the Agency failed to meet its burden under section 8151(b)(2) of proving that it made all reasonable efforts to reemploy him. Finally, Kachanis contends that the Board erroneously considered new arguments and evidence raised by the Agency and did not accord proper deference to the findings of the administrative judge. This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(9) (1994). *See Lindahl v. OPM*, 470 U.S. 768, 796–97, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985) (holding that Federal Circuit has jurisdiction to review a final decision of the Board).

---

1. Both the administrative judge and the Board denied Kachanis's further claims for age and disability discrimination. In his briefing to the court, Kachanis represents that he waives these discrimination claims in this appeal.

## II.

Our scope of review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. *See* 5 U.S.C. § 7703; *Kewley v. Department of Health & Human Servs.*, 153 F.3d 1357, 1361 (Fed.Cir.1998).

We begin with Kachanis's challenge to the regulations at 5 C.F.R. Part 330. According to Kachanis, the regulations are irreconcilable with Congress' declarations at 5 U.S.C. § 8151(b)(2). Under the principles set forth by the Supreme Court in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), Kachanis concludes, the regulations are entitled to no deference from this court.

■■■■ Before turning to the merits of Kachanis's challenge, the court must first consider whether Kachanis properly preserved the issue for appellate review. This court has long held that appellants may not raise issues on appeal for the first time. *See, e.g., Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 1426 (Fed.Cir.1997); *Frank v. Department of Transportation, Fed. Aviation Admin.*, 35 F.3d 1554, 1559 (Fed.Cir.1994); *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1579 (Fed.Cir.1991). As we explained in *Wallace v. Department of the Air Force*, 879 F.2d 829, 832 (Fed.Cir.1989),

> [o]rdinarily, appellate courts refuse to consider issues not raised before an administrative agency. [O]bjections to the proceedings of an administrative agency [must] be made while it has an opportunity for correction in order to raise issues reviewable by the courts. A corollary is that the issue must be raised with sufficient specificity and clarity that the tribunal is aware that it must decide the issue, and in sufficient time that the agency can do so.

(internal quotation marks and citations omitted).

The government argues that Kachanis did not raise his allegations of a conflict between 5 U.S.C. § 8151 and the surrounding regulations before the Board. According to the government, this deprived the Board of the opportunity to make sufficient factual findings and conclusions of law. The government concedes that Kachanis asserted that 5 U.S.C. § 8151 and certain regulations from 5 C.F.R. Parts 330 and 353 were interpreted incorrectly by the Agency. Nevertheless, it asserts that these arguments were not presented with any "significant specificity." As a result, the government maintains that the court should disregard the allegations in their entirety.

We do not find the government's argument to be persuasive. In the proceedings before the administrative judge, Kachanis raised the allegations at least three times. First, in his written pretrial submissions to the judge, Kachanis argued as follows:

> By employing individuals from out of District rather that [sic] reemploying Mr. Kachanis, the agency has violated appellant's restoration rights. Even if the agency could do this it would then be in violation of making every effort to restore the individual to his former position. The language in this Provision is not vague. When congress [sic] used the term "make every effort" it left no doubt as to its' [sic] intent..... When Congress said · make every. effort, it meant just that make every effort [sic]. No stone must be left unturned here. There are no vague terms here.
>
> Neither agency policy or interpretations can be allowed to distort the intent.

Kachanis also raised the allegations in his closing brief to the judge, noting that the Agency's "practices in conjunction with a loose interpretation of the Regulations effectively nullify the Law and the intent of Congress in passing Section 8151 to place

'the employee in his former or equivalent position within such department or agency or within any other department or agency' 5 U.S.C. ss 8151(b)(2) [sic]." Finally, Kachanis emphasized his position during his closing remarks, when counsel argued that "[t]he treatment that we gave to [Kachanis] was certainly not foreseen by Congress and that's the area I want to comment on closely."

Before the Board, Kachanis alleged a conflict between section 8151 and the implementing regulations once again. Specifically, Kachanis filed a response to the government's petition for review in which he contended that

> the wording in the statute is clear that the agency is required to make every effort. We find however that the regulation in 330.201 added something not found in the law. This includes in part "In filling vacancies, the agency must give priority consideration over certain outside job applicants and if it chooses, also may consider RPL registrants before internal candidates." There is no choice given in the law. The regulation has added a choice not provided for in the statute.

Under these circumstances, we find that Kachanis has adequately preserved the issue of statutory conflict for appeal. These contentions clearly satisfy this court's standard for raising arguments before the administrative agency. A party need only present the issue so that it is "raised with sufficient specificity and clarity that the tribunal is aware that it must decide the issue, and in sufficient time that the agency can do so." *Wallace*, 879 F.2d at 832; *see also Shearin v. United States*, 992 F.2d 1195, 1197 (Fed.Cir.1993); *Synan v. Merit Sys. Protection Bd.*, 765 F.2d 1099, 1101 (Fed.Cir.1985); *Doyle v. United States*, 220 Ct.Cl. 285, 599 F.2d 984, 1000 (1979). By presenting the statutory conflict issue in various filings to the administrative judge, as well as to the full Board, Kachanis is afforded the Agency this opportunity. Here, both the administrative judge *and*

the Board had the opportunity to address Kachanis's concerns, although neither did, thus alleviating any concerns we may have about premature appellate review.

 Having determined that the statutory conflict issue stands squarely before us, we may now consider the merits of Kachanis's challenge. In *Delverde, SrL v. United States*, 202 F.3d 1360 (Fed.Cir. 2000), this court reiterated the principles that govern our review under *Chevron* of an agency's interpretation of a statute that it is charged with administering.

> We must first carefully investigate the matter to determine whether Congress's purpose and intent on the question at issue is judicially ascertainable. We do so by employing the traditional tools of statutory construction; we examine the statute's text, structure, and legislative history, and apply the relevant canons of interpretation. If we ascertain[ ] that Congress had an intention on the precise question at issue, that intention is the law and must be given effect, and the only issue is whether the agency acted in accordance with that intent.

*Id.* at 1363 (citing *Chevron*, 467 U.S. at 842–43 & n. 9, 104 S.Ct. 2778; *Timex V.I., Inc. v. United States*, 157 F.3d 879, 881–82 (Fed.Cir.1998); *LTV Steel Co. v. United States*, 174 F.3d 1359, 1363 (Fed.Cir.1999)) (internal quotation marks omitted).

At its heart, Kachanis's challenge concerns the scope of Congress's mandate in section 8151(b)(2). This section provides, in pertinent part, that

> the department or agency which was the last employer shall, if the injury or disability is overcome within a period of more than one year after the date of commencement of compensation, *make all reasonable efforts to place*, and *accord priority to placing*, the employee in his former or equivalent position within such department or agency, or within any other department or agency.

5 U.S.C. § 8151(b)(2) (emphasis added).

 Kachanis argues that this language requires that workers injured more than

one year receive treatment equal to what they would have received in the absence of injury. Kachanis then contends that the regulations implementing this provision at 5 C.F.R. Part 330 contradict the provision, by affording less than absolute priority to such injured workers over both external and internal candidates for positions within the agency. Kachanis notes, for example, that under 5 C.F.R. § 330.201, the agency enjoys full discretion to deny such workers priority over internal candidates. *See* 5 C.F.R. § 330.201. *See also* 5 C.F.R. § 330.206 (granting agency discretion to give certain employees on RPL priority outside commuting area). Kachanis also points to the legislative history behind the section, including various statements from representatives in Congress and previous language in the code repealed by the enactment of the section. *See* H.R. 13871, 93rd Cong., 1st Sess. at 13402 (1971) (comments of Rep. Biaggi); P.L. No. 93–416, 88 Stat. 1150 (Sept. 7, 1974) (repealing 5 U.S.C. § 3315a). Citing to *Chevron,* Kachanis concludes that the regulations are thus entitled to no deference by this court.

The language of the section only mandates priority for workers injured more than one year in the most general of terms: "the department or agency ... shall.. accord priority to placing ... the employee." We simply do not understand this language to demand absolute priority, as Kachanis suggests.

In contrast, where Congress intended to afford injured workers absolute priority in hiring, it said so. For example, under section 8151(b)(1), workers injured *less* than one year receive priority in hiring over both external and internal candidates. Significantly, the statute make this absolutely clear, as it provides that "the department or agency which was the last employer shall *immediately and unconditionally accord* the employee ..., if the injury or disability has been overcome within one year, ... the right to resume his former or an equivalent position." 5 U.S.C. § 8151(b)(1) (emphasis added). If

Congress had intended similar priority for workers injured *more* than one year, it would have done the same under section 8151(b)(2). But it did not. Whatever the propriety of this distinction among injured workers, we must respect Congress's determination, as must the Agency. Because the Agency has done just that, we conclude that the regulations are entirely proper and consequently entitled to deference.

We also note that the statute gives the Office of Personnel Management discretion in implementing its requirements. Section 8151(b) begins with the phrase: "Under regulations issued by OPM." This language is evidence of Congress's intent to let OPM decide how agencies should satisfy the statute's requirements. Moreover, the absence in section 8151(b)(2) of any details on the extent to which agencies are required to grant priority under that section, or on how agencies are to afford such priority must be understood as granting the Office of Personnel Management and the agencies discretion in such matters. This discretion is confirmed by the legislative history of section 8151(b)(2), which does not define "priority" or discuss how an agency might satisfy the requirement that it "make all reasonable efforts to place, and accord priority to placing, the employee."

In contrast, in the legislative history of section 8151(b)(1), it is clear that Congress intended for individuals that recovered within one year of the date of disability to have absolute rights in placement. The House Report states that "Section 22 of the Bill provides a guaranteed right to an injured employee to return to his former or an equivalent position." H.R.Rep. No. 1025 at 3 (1974). This establishes that when Congress expected absolute priority in placement, it so stated. By comparison, no mention of "absolute" priority is made in section 8151(b)(2). Thus, the statute and its legislative history do not support Mr. Kachanis's interpretation affording him immediate reemployment.

 The Board properly focused on whether Kachanis was afforded any further rights under the CTAP. Here, too, the Board's decision must be respected. The Board conceded, properly so, that an agency's own policy or regulations regarding the filling of vacancies supersedes the regulations to the extent they afford greater rights. *See Stuck v. Dep't of the Navy*, 72 M.S.P.R. 153, 156–57 (1996). The CTAP is just such an agency policy. Accordingly, the question to be answered is whether the CTAP afforded Kachanis anything beyond the implementing regulations.

We conclude that the answer is no. By its own terms, the CTAP applies only to "surplus" and "displaced" workers within the Agency. Both of these types of workers are defined as "current employees." In contrast, Kachanis was not a *current* agency employee; he was a *former* agency employee. As a result, the general provisions of the CTAP do not apply to him. Kachanis is left to qualify for one of the CTAP's "special selection provisions." Admittedly, the second exception, "[r]employment of a former agency employee exercising regulatory or statutory reemployment rights," is most applicable to Kachanis. But as the Board determined, this exception only affords workers the rights they are entitled to under the regulations. As a result, even if Kachanis does qualify under the exception, he enjoys no more rights than he already had.

 Nevertheless, we agree with Kachanis that several errors occurred in the Agency's application of the regulations. First, despite the mandate of 5 C.F.R § 330.202(b), the Agency took over four months to place Kachanis on the RPL after he submitted a request. The Board, in its decision, never addressed this issue. Nor did the Board address why Kachanis was never considered for part-time as well as full-time work, despite the absence of any such limitations in the regulations. *See* 5 C.F.R. § 330.205(a). Moreover, the Board did not address the Agency's failure to consider Kachanis for positions beyond his assigned geographical area and grade level. In is argument to the court, the government only notes that Kachanis must prove prejudice from any agency error. Accordingly, we remand the case back to the Board for further fact-finding on the issue of prejudice from these errors.

*AFFIRMED–IN–PART, VACATED–IN–PART AND REMANDED*

Each party shall bear its own costs.