Vernice L. YAHLE, Petitioner,

v.

OFFICE OF PERSONNEL
MANAGEMENT,
Respondent.

No. 01–3285.

United States Court of Appeals,
Federal Circuit.

DECIDED: March 11, 2002.

Before MICHEL, CLEVENGER and BRYSON, Circuit Judges.

MICHEL, Circuit Judge.

Vernice Yahle seeks review of a final decision by the Merit Systems Protection Board ("Board") affirming the decision by the Office of Personnel Management ("OPM") about the effective retirement date used to calculate the amount of Yahle's disability retirement annuity. *Yahle v. Office of Pers. Mgmt.*, No. CH–0841–00–0743–I–1 (March 19, 2001). Because Yahle had essentially accepted the retirement date that OPM used to calculate her annuity, and because the Board committed no errors of law in reaching this determination, we *affirm.*

## Background

Yahle's former federal employer, the Department of Veterans Affairs ("DVA"), discharged Yahle in 1993, after Yahle had worked there only during the six-month "probation" period. Yahle thereafter sued the DVA for unlawful discrimination, and the parties' subsequent settlement agreement and court order stipulated that, in order to make Yahle eligible for disability retirement benefits, DVA would treat Yahle as if she had gone on "leave without pay" ("LWOP") status from the time of her actual discharge (January 1993) to the time of the resignation date set in the settlement contract (November 1998). (J.A. 138–39.) The DVA also agreed to pay Yahle $20,000 in back pay and another $25,000 for emotional distress, as well as Yahle's attorney fees.

To qualify for disability retirement benefits, a federal employee must have at least 18 months service. 5 U.S.C. § 8451(a)(1)(A). The more months worked, however, the more an employee who qualifies for these benefits will actually receive in terms of monthly payments. Generally speaking, months spent on LWOP status count about half as much as the months spent actually working for purposes of calculating the amount that an eligible employee will receive in disability retirement payments. *See* 5 U.S.C. § 8411(d) (stating that an employee who takes "leaves of absence without pay" will receive six months' credit for every "calendar year" spent in LWOP status).

## OPM Calculates Yahle's Disability Retirement Annuity

In calculating the monthly amount owed to Yahle in disability retirement benefits, the Office of Personnel Management granted Yahle the 18-month minimum needed to so qualify. (J.A. 52–54.) Yahle argued to OPM that in calculating her monthly payments, OPM instead had to consider all the time she spent in LWOP status, as the DVA–Yahle settlement agreement states. (J.A. 56–57, 139.) OPM countered that, in its view, a contract did not and could not govern its calculations for determining the amount owed on a disability retirement annuity; and that OPM therefore had to give Yahle only the 18-month minimum needed to so qualify. (*See* J.A. 54.) Yahle appealed OPM's decision to the Merit Systems Protection Board.

## The Administrative Judge's Telephonic Hearing with Yahle

In September 2000, Yahle submitted to the Administrative Judge ("AJ") a "prehearing submission," which identifies as one of the three issues for the Board: "(b) Whether the computation of [Yahle's] annuity should be based upon 18 months of service up to June 20, 1994[,] or 42 months

of service up to November 4, 1998." (J.A. 27.) A month later, in October 2000, the AJ held a telephonic status conference, at which Yahle and her lawyer acknowledged the "choice" Yahle now had about the retirement date she wanted to use for purposes of her annuity: June 1994 or November 1998. (*See* J.A. 22.) Yahle also acknowledged the consequences of choosing this latter 1998 date, including the consequences of having the annuity payments start at a later date, of having to "pay back benefits she received under" the earlier 1994 date, and of having "certain tax problems associated with" that 1998 date. (*Id.*)

The AJ and the parties also discussed the problem that Yahle had with the certified record that DVA had submitted to OPM for purposes of calculating Yahle's annuity. This certified record does not reflect the $20,000 that Yahle received in "back pay" under the parties' settlement agreement. According to the "summary of telephonic hearing conference," Yahle and her lawyer indicated that they would attempt to address this matter with the DVA, not OPM; as the Administrative Judge noted, "OPM has no authority to change the information contained on this [certified record], and should OPM have properly calculated the appellant [Yahle's] annuity based on the [record], I must uphold OPM's determination." (J.A. 23.)

Yahle subsequently elected to forego a hearing on the merits. Nothing in the record shows that, after the October 2000 telephonic hearing, Yahle had objected to OPM's use of the June 1994 retirement date, as opposed to the November 1998 date.

### The Board Affirms OPM's Decision

In March 2001, the AJ upheld OPM's decision. First, as stated in the AJ's decision, Yahle did not object to OPM's use of

the June 1994 date (as opposed to the November 1998 date) by the time the AJ had closed the record. (J.A. 2 n. 1.) Again, if Yahle chose the November 1998 date, she would have also had to make "annuity overpayment[s]"—presumably because she had already received payments from the government that she was not yet entitled to receive—and likely would have faced adverse tax consequences. According to the AJ, OPM had simply made the choice for her based on what OPM viewed as the "most advantageous" decision for Yahle.

Taking the effective retirement date of June 21, 1994, then, the AJ also rejected Yahle's claim that OPM should have instead calculated the annuity amount by using the pay rates applicable in November 1998, not June 1994. "By definition," the AJ reasoned, Yahle could not use pay rates that were in effect in 1998 when she had effectively retired in 1994. (*See* J.A. 3.) Citing 5 C.F.R. § 531.406(b)(2)(i), the AJ also rejected Yahle's assertion that OPM had erroneously failed to credit her for "within-grade step increases" for the time she spent in LWOP status. (*Id.*) As the AJ saw it, Yahle could not use the time spent in LWOP status toward the time requirements (or "waiting period") for a "within-grade step increase," since the regulation disallows such credit for any "nonpay" leave that exceeds two weeks. (*See* J.A. 3.)

Last, the AJ concluded that OPM did not err by refusing to take into account the $20,000 that Yahle had received in back pay for purposes of calculating her annuity. (J.A. 4) (citing 5 C.F.R. § 841.106). Under the AJ's analysis, the regulations prohibit OPM from taking action on any annuity account based on anything other than the "individual retirement record" certified by an employing agency. (*Id.*) The certified record that OPM received from Yahle's employing agency (the DVA)

did not list this $20,000 back pay award. (*Id.*) In addition, citing Board precedent, the AJ reasoned that OPM did not have to consider a lump-sum award of back pay in calculating an annuity. (*Id.*) (citing *Reed v. Office of Pers. Mgmt.*, 32 M.S.P.R. 290, 293 (M.S.P.B.1987), *aff'd*, 837 F.2d 1097 (Fed.Cir.1987)).

The AJ's decision became final in April 2001. This petition for review followed. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## Discussion

■ We play a limited role in reviewing Board decisions. Rather than reviewing anew the issues and evidence presented by Yahle, we must affirm the Board unless its decision was (1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Forest v. Merit Sys. Protection Bd.*, 47 F.3d 409, 410 (Fed.Cir.1995). Applying this deferential standard of review, we reject the four arguments that Yahle now makes in her petition and affirm the Board's decision.

### A

Yahle first argues that, contrary to the AJ's statement in her opinion, she did indeed present and preserve the issue about the "effective starting date" (*i.e.*, the effective retirement date) that she wants for purposes of calculating her annuity benefits. Yahle cites nothing in the record to actually support this assertion. The government itself, meanwhile, charitably points to the single statement of the issue in Yahle's "pre-hearing submission" to the AJ. Nevertheless, the government maintains that Yahle "waived" this issue for our review because she failed "to raise it at the MSPB hearing, and thus failed to preserve error on this issue." (Resp't Br. at 8.)

■ Of course, no hearing (besides the telephonic conference) ever actually took place, if only because Yahle herself had elected to forego that right. Even so, we agree with the government that Yahle failed to preserve this issue. Appellate courts ordinarily refuse to consider issues not raised before an administrative agency. *Kachanis v. Dep't of Treasury*, 212 F.3d 1289, 1293 (Fed.Cir.2000). A party must raise objections to an agency while that agency "has an opportunity for correction in order to raise issues reviewable by the courts." *Id.* (quoting *Wallace v. Dep't of Air Force*, 879 F.2d 829, 832 (Fed.Cir. 1989)). In addition, a party must raise that objection or issue "with sufficient specificity and clarity [so] that the tribunal is aware that it must decide the issue, and in sufficient time that the agency can do so." *Id.*

Our precedents illustrate why Yahle has failed to preserve this issue for appellate review. In *Wallace*, we held that a petitioner had failed to preserve an issue about the validity of certain "performance standards" when the pretrial submission filed with the AJ did not mention "performance standards" in the single issue presented or else in the "three paragraphs that followed." 879 F.2d at 833. The petitioner only later explicitly presented the issue to the full Board. *Id.* at 832. By contrast, in *Kachanis*, we held that a petitioner had sufficiently preserved an issue for our review. *Id.* at 1294. Unlike here, the petitioner there described that issue at length in "his written pretrial submissions" to the AJ, raised the issue again "in his closing brief" to the AJ, "emphasized his position during his closing remarks" to the AJ, and raised the issue again before the Board. *See* 212 F.3d at 1293–94.

■ This case lies somewhere between *Wallace* and *Kachanis;* but ultimately, we agree with the government that a "waiver" occurred, *i.e.*, that Yahle failed to exhaust or otherwise fairly present this issue for the AJ's or the Board's consideration. In the 167–page record, Yahle cites nothing to show she had squarely presented the issue for the AJ's review. True, the pretrial submission does list the issue. But the record of the telephonic conference, which occurred about a month *after* Yahle had filed her pretrial hearing submission, indicates that the AJ had given Yahle the "choice" of deciding whether she wanted the 1994 or the 1998 retirement date (and the problems associated with it). (*See* J.A. 22.) Nothing after that telephonic conference—not a brief, not a closing statement, not anything else—shows that Yahle did anything to alert the AJ about her position on this issue. Thus, the AJ could have reasonably concluded that Yahle now thought that OPM had indeed given her the most "advantageous" effective date (April 1994) and that she simply did not want to suffer the tax consequences, or pay back money into the annuity system, or else incur any of the other problems related to the 1998 effective date. (*See* J.A. 2 n. 1.) Accordingly, we conclude that Yahle failed to preserve this issue for our review.

### B

■ Having concluded that Yahle essentially accepted the June 1994 effective retirement date, we also conclude that the Board correctly affirmed OPM's decision not to use 1998 pay rates to calculate Yahle's annuity.

As stated earlier, an "employee" must complete "at least 18 months of civilian service" to qualify for disability retirement annuity benefits. 5 U.S.C. § 8451(a)(1)(A). By definition, an employee who ultimately qualifies for these annuity benefits—an "annuitant"—must have also become "a former employee" in order to receive these benefits. *See* 5 U.S.C. § 8401(2) (defining "annuitant" for purposes of the federal employees' retirement system) (emphasis added). In calculating that annuitant's annuity, OPM must also calculate that annuitant's "average pay." *See* 5 U.S.C. §§ 8452(a)(1)(A)(i) and (ii). "Average pay" refers to "the largest annual rate resulting from averaging an *employee*'s [*i.e.*, active employee's] . . . rates of basic pay in effect over 3 consecutive years of service." 5 U.S.C. § 8401(3) (emphasis added). If awarded, the disability annuity payments will begin "on the day after the employee separates or the day after pay ceases." 5 C.F.R. § 844.301. In short, annuitants (like Yahle) have the amount of their annuity calculated by using the years of basic pay that they were earning when, indeed, they were still working as an active "employee."

And so, because Yahle effectively settled on June 1994 as her retirement date (the date on which she became an "annuitant" or "former employee") OPM did not err by using the rates of pay applicable to 1994 and earlier—the "average pay" applicable at the time when Yahle was still technically an "employee." Thus, based on the effective 1994 retirement date, the Board correctly affirmed OPM's decision not to use 1998 pay rates to calculate Yahle's annuity.

### C

■ Next, the Board correctly upheld OPM's decision to exclude from its annuity calculation the pay increases that Yahle claims she should have received over the time she worked for DVA, *i.e.*, for the years in which, under the settlement agreement, the government had granted Yahle "leave without pay" status so as to make Yahle eligible for disability retire-

ment benefits. A pay increase in an employee's "basic pay"—to which these within-grade pay increases would apply—would also ultimately raise the amount of the disability retirement annuity.

The relevant regulation states that, for purposes of determining credit for the time or "waiting period" needed to qualify for a "within-grade" pay increase, "[t]ime in a nonpay status" (*e.g.*, leave without pay status) counts as credit so long as it "does not exceed an aggregate of two workweeks in the waiting period for an employee whose basic rate of pay is less than the rate of basic pay for step 4 of the applicable period." 5 C.F.R. § 531.406(b)(2)(i). In other words, an employee cannot credit time spent on nonpay status to the "waiting period" needed to become eligible for a within-grade pay increase when, as here, that time exceeds two weeks.

Accordingly, because Yahle—by virtue of the settlement agreement—spent several months on LWOP (or nonpay) status, she could not receive credit for these months for purposes of awarding her "within-grade" pay increases. Thus, as the Board held, OPM did not err by excluding these within-grade pay increases from the calculation used to determine her annuity.

In a two-sentence argument, Yahle asserts that the Board erred in this regard because 5 C.F.R. § 531.406(b)(3) does allow credit for time spent in nonpay status. But that regulation instead mandates that time spent in nonpay status actually *extends* the "waiting period" needed to become eligible for a within-grade pay increase: "Except as provided in paragraph (c) of this section, time in a nonpay status ... that is in excess of the allowable amount [*e.g.*, two 'workweeks'] shall extend a waiting period by the excess amount." 5 C.F.R. § 531.406(b)(3). Paragraph (c), meanwhile, simply lists exceptions to this

general rule. *See* 5 C.F.R. § 531.406(c)(1)(i) (creating exception to the rule about extending the "waiting period" for employees who take nonpay status to engage in military service); § 531.406(c)(1)(ii) (exception for employees receiving "injury compensation"); § 531.406(c)(1)(iii) (exception for employees who take nonpay status to serve as a volunteer as defined by 5 U.S.C. § 8332(b)); § 531.406(c)(1)(iv) (exception for employee who "is temporarily employed by another agency in a position covered by this subpart"); § 531.406(c)(1)(v) (exception for employees "assigned to a State or local government or institution of higher education"). Yahle does not assert that any of these exceptions apply to her. Thus, we affirm the Board's ruling here as well.

### D

█ Finally, Yahle suggests that the Board should have remanded her case to OPM so that DVA could "re-certify" Yahle's retirement record and thereby have the $20,000 back pay award added to that record for purposes of calculating Yahle's annuity. Yahle cites no authority to support this suggestion. For at least two reasons, moreover, the Board had no obligation to follow it.

First, the regulations instruct OPM to base its calculations of Yahle's annuity amount by examining only the certified record sent by Yahle's employing agency (the DVA). *See* 5 C.F.R. § 841.106(b)(1) (stating that the "individual retirement record ... is the basic record for action on all claims for annuity or refund"). The only exception does not apply here. *See* 5 C.F.R. § 841.106(b)(2) (allowing OPM to "accept such inferior or secondary evidence that it considers appropriate under the circumstances" when "the official records repository for the records in question certifies that the records are lost, destroyed, or incomplete").

Second, the annuity statute requires only that OPM include "basic pay" in its annuity calculations. The annuity of a retiring employee consists of a certain percentage of that employee's "average pay." 5 U.S.C. § 8339(a). "Average pay" consists of an annual average of the employee's "basic pay." 5 U.S.C. § 8331(4). And "basic pay" does not include "bonuses, allowances, overtime pay, military pay, pay given in addition to the base pay of the position as fixed by law or regulation . . . ." 5 U.S.C. § 8331(3).

Thus, because the $20,000 back pay at issue here came from a settlement agreement and therefore constitutes "pay given in addition to the base pay" of Yahle's position, OPM correctly excluded it from its calculation of Yahle's annuity. *See id.; see also Reed v. Office Pers. Mgmt.*, 837 F.2d 1097, 1987 WL 25756, at *1 (Fed.Cir. Dec. 17, 1987) (Table) ("The board correctly held that under the applicable statutes, an annuitant's retirement is calculated on the basis of an employee's basic pay. 'Basic pay' . . . does not include 'bonuses, allowances, overtime pay, military pay, [or] pay given in addition to the base pay of the position as fixed by law or regulation . . .' Therefore, petitioner's back pay award was properly excluded in calculating her retirement annuity.").

As a result, since OPM could not base its annuity calculations on anything more than the record certified by DVA, and since that certified record did not need to include the back pay award that Yahle received via her settlement agreement, we decline Yahle's invitation to have this matter remanded to the Board and, in turn, to OPM. We therefore affirm the Board's decision.