NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**JAY P. GINSBERG,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

_____

2022-1900

_____

Petition for review of the Merit Systems Protection Board in No. AT-1221-21-0116-W-1.

_____

Decided: October 31, 2023

_____

SHANNON POLVI, Cromer Babb Porter Hicks, LLC, Columbia, SC, argued for petitioner.

LIRIDONA SINANI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY.

_____

Before STOLL, CUNNINGHAM, and STARK, *Circuit Judges*.

STOLL, *Circuit Judge*.

Dr. Jay P. Ginsberg appeals the decision of the Merit Systems Protection Board affirming the Department of Veterans Affairs' personnel actions related to his Research Health Scientist position. Because substantial evidence supports the Board's finding, we affirm.

## BACKGROUND

Dr. Ginsberg began his employment with the Department of Veterans Affairs (VA) in the Research Department of the Dorn VA Medical Center as a Psychologist in March 2004 with a term appointment of two years. His title was corrected to Research Health Scientist and his appointment was extended multiple times until his last appointment, which had a Not To Exceed (NTE) date of December 2019. During Dr. Ginsberg's last appointment, he was working on a research project that was initially awarded to him and Dr. James Burch, with both being named as Co-Principal Investigators.

Concurrently, in March 2009, Dr. Ginsberg was appointed to a Clinical Psychologist-Neuropsychologist position in the Transition and Care Management Service at the Dorn VA Medical Center. In 2018, Dr. Ginsberg's clinical privileges were suspended. In May 2019, the VA removed Dr. Ginsberg from his clinical position for (1) failure to enter patient progress notes into the Computerized Patient Reporting System and (2) failure to perform acceptable standard of practice. Dr. Ginsberg appealed his removal to the Merit Systems Protection Board, asserting that (1) he had regularly made protected disclosures and complaints to the VA regarding issues with the credentialing and performance review standards and the reporting system; and (2) his removal was retaliation for his protected disclosures. The Board denied Dr. Ginsberg's request for corrective action. *Ginsberg v. Dep't of Veterans Affs.*, No. AT-1221-19-0529-W-1, 2020 WL 1508133 (M.S.P.B. Mar. 23, 2020). On appeal, we affirmed the Board's decision.

*Ginsberg v. Dep't of Veterans Affs.*, 844 F. App'x 365 (Fed. Cir. 2021).

The loss of Dr. Ginsberg's clinical privileges, however, triggered a sequence of events relating to his research position. At this time, Dr. Ginsberg was working on a research project that was awarded to him and Dr. James Burch, with both being named as Co-Principal Investigators. Dr. David Omura, Director of the Dorn VA Medical Center, notified Dr. Kathlyn Haddock, Associate Chief of Staff who oversaw Dr. Ginsberg's research work, that Dr. Ginsberg's clinical privileges had been suspended. Dr. Haddock then notified the Dorn VA Medical Center Institutional Review Board (IRB) of this change. In August 2018, the IRB voted to recommend changing the scope of Dr. Ginsberg's role to prevent him from accessing patient and subject data. Subsequently, in November 2019, Dr. Ginsberg's title on the project was changed from Co-Principal Investigator to Co-Investigator, and his name was removed from the research grant.

In October 2019, Dr. Ginsberg requested bridge funding for his research project for six months after December 31, 2019, his NTE date. Bridge funding is a six-month extension of salary following a project's end date that allows the project leaders to complete pending research items. Dr. Haddock contacted the Office of Research and Development (ORD) inquiring whether Dr. Ginsberg was eligible for such funding and was notified that Dr. Ginsberg was ineligible under the ORD Program Guide 1200.15, because such funding was only awarded to principal investigators who held at least a 5/8ths appointment,[1] which Dr. Ginsberg no longer held after being removed

---

[1] VA appointments are represented in eighths, where each eighth represents five hours per week. Accordingly, 5/8ths represents a VA appointment of 25 hours per week.

from his clinical position. Dr. Ginsberg's appointment as a Research Health Scientist ended on his NTE date of December 31, 2019.

Dr. Ginsberg filed an individual right of action (IRA) appeal to the Board under the Whistleblower Protection Act, asserting that the agency retaliated against him for (1) disclosing that the agency's credentialing and performance review standards for its clinical practice were improper; (2) filing a complaint with the Office of Special Counsel regarding removal from his Clinical Psychologist position; and (3) appealing to the Board, challenging the removal from his Clinical Psychologist position. He asserted that the agency's retaliation consisted of (1) denying his bridge funding request; (2) demoting him from Co-Principal Investigator to Co-Investigator; (3) excluding him from participation in new VA funded research; (4) removing his name from the research grant; and (5) ending his appointment on December 31, 2019.

The Board found that Dr. Ginsberg had established a prima facie case of whistleblower reprisal, but that the VA demonstrated by clear and convincing evidence that it would have taken the same actions against Dr. Ginsberg even in the absence of his protected disclosures and activity. *Ginsberg v. Dep't of Veterans Affs.*, No. AT-1221-21-0116-W-1, 2022 WL 1144886, at *1 (M.S.P.B. Apr. 15, 2022) (*Board Decision*).

Dr. Ginsberg appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our review of Board decisions is limited by statute. We uphold the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shapiro v. Social Sec. Admin.*, 800 F.3d 1332, 1336 (Fed. Cir. 2015) (internal quotation marks and citation omitted).

We conclude that substantial evidence supports the Board's finding that the government demonstrated that the VA would have taken the same actions absent Dr. Ginsberg's disclosures. The government argues that the agency's actions were a reasonable consequence recommended by the IRB and the ORD given the loss of Dr. Ginsberg's clinical position and corresponding reduction in hours. Dr. Ginsberg responds that the IRB recommendation and the ORD guidance were not mandatory. But the issue is whether a reasonable fact finder could find that the agency would have taken the same action—adhere to the IRB recommendation and the ORD guidance—absent the disclosures. *See Hathaway v. Merit Sys. Prot. Bd.*, 981 F.2d 1237, 1242 (Fed. Cir. 1992) ("We may not upset the Board's reasonable choices so long as they are supported by substantial evidence."). The recommendation of the IRB, even if not mandatory, provides strong evidence demonstrating that the agency's actions would have been taken even in the absence of whistleblower action, particularly as "[t]here is no indication that the IRB committee members . . . were aware of [Dr. Ginsberg's] protected disclosures or of his protected activity." *Ginsberg v. Dep't of Veterans Affs.*, No. AT-1221-21-0116-W-1, 2021 WL 2894670 (M.S.P.B. July 6, 2021) (*Initial Board Decision*); J.A. 1224–25. Likewise, the existence of a written policy supporting the agency's action is further evidence that the agency would have taken the same actions absent the whistleblower activity.

In assessing whether the VA would have taken these actions in the absence of Dr. Ginsberg's protected disclosures and activity, the Board considered the three non-exclusive *Carr* factors: (1) the strength of the agency's

evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency's officials who were involved in the decision; and (3) any evidence that the agency takes similar action against employees who did not engage in protected activity but who are otherwise similarly situated. *Board Decision*, 2022 WL 1144886, at *1–2 (citing *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999)). On appeal, Dr. Ginsberg challenges factual findings made by the Board related to each *Carr* factor. We find substantial evidence supports the Board's finding on all three factors.

As to the first *Carr* factor, substantial evidence supports the Board's finding that the "agency's evidence in support of the personnel actions was strong." *Board Decision*, 2022 WL 1144886, at *1. The IRB committee "recommended that Dr. Ginsberg's scope of practice be amended to show that he could not serve in a clinical capacity on the [research] project . . . includ[ing] not having any access to patients or subject data." J.A. 1184. The ORD Program Guide 1200.15 Section 4 states that "[r]esearch funds may only be awarded if the Principal Investigator (PI) and any Co-Principal Investigator (Co-PI) have employment status . . . of at least 25 hours per week (5/8ths)," J.A. 1173, and Dr. Ginsberg was at a 2/8ths appointment after losing his clinical position. The Program Guide goes on to state that "[e]ligibility for VA research support remains in effect . . . until there is a change in investigator's status," J.A. 1174, which was the case for Dr. Ginsberg. As noted above, we view the IRB committee's recommendation and the ORD Program Guide as strong evidence in support of the VA's personnel actions.

With respect to the second *Carr* factor, substantial evidence supports the Board's finding that "any motive to retaliate, if it existed here, was minimal." *Board Decision*, 2022 WL 1144886, at *2. As the Board acknowledged, Dr. Omura and Dr. Haddock were both agency officials who were aware of the protected activity and were

responsible for several of the personnel actions, and thus, a motive to retaliate may have existed. On appeal, Dr. Ginsberg points to evidence he deems to be indicative of a retaliatory motive and animus on behalf of Drs. Omura and Haddock. *See, e.g.*, Appellant's Br. at 39–41. With respect to the motivations of Dr. Omura, we have no basis to credit Dr. Ginsberg's contentions that the Board failed to consider all the pertinent evidence presented to it or that the Board was required to give Dr. Ginsberg's preferred evidence more weight. As to Dr. Haddock, Dr. Ginsberg points to "an ethics complaint" Dr. Ginsberg had filed against Dr. Haddock, but Dr. Ginsberg did not claim (nor did the Board find) that this complaint was a protected activity. Dr. Omura and Dr. Haddock simply followed the recommendations of the IRB and the ORD, and there is no indication the members of the IRB were even aware of Dr. Ginsberg's protected speech or activities. *Initial Board Decision*, 2021 WL 2894670; J.A. 1224–25. As the Board further noted, "other agency employees, such as an [ORD] employee . . . appear to have been involved in the personnel actions, but there is no evidence that they were aware of [Dr. Ginsberg's] protected disclosure or protected activity." *Board Decision*, 2022 WL 1144886, at *2 n.2.

The Board found the third *Carr* factor neutral. The VA "failed to present evidence of nonwhistleblower comparator employees," asserting that there were no comparator employees. *Board Decision*, 2022 WL 1144886, at *2 (citation omitted). As the Board acknowledged, we stated in *Whitmore* that "the absence of any evidence concerning *Carr* factor three may well cause the agency to fail to prove its case overall." *Whitmore v. Dep't. of Labor*, 680 F.3d 1353 (Fed. Cir. 2012). But here, the agency presented testimony that "there have not been any individuals with suspended clinical privileges who are/were allowed to be a PI or Co-PI and access patients and [personal health information] data for the research project." *E.g.*, J.A. 1206, 1210. Further, Dr. Ginsberg did not dispute the VA's

assertion that there were "no similarly situated doctors who lost their clinical privileges and their Veterans Affairs (VA) appointments." *Board Decision*, 2022 WL 1144886, at \*2. Thus, we conclude that the Board's finding that this factor is neutral is reasonable.

On appeal, Dr. Ginsberg argues that the agency's view of comparator employees was too narrow. As an initial matter, we have reviewed Dr. Ginsberg's briefing before the Board. It appears that Dr. Ginsberg never raised this argument and thus, it is forfeited. *Kachanis v. Dep't of Treasury*, 212 F.3d 1289, 1293 (Fed. Cir. 2000) ("This court has long held that appellants may not raise issues on appeal for the first time."). Even if we were to agree with Dr. Ginsberg's argument as to this factor, "the agency need not prove every factor weighs in its favor, [and] the absence of evidence related to *Carr* factor three is not fatal to the agency." *Rickel v. Dep't of the Navy*, 31 F.4th 1358, 1366 (Fed. Cir. 2022); *Whitmore*, 680 F.3d at 1374 (explaining that "*Carr* does not impose an affirmative burden on the agency to produce evidence" and show that each *Carr* factor weighs "individually in the agency's favor"). Here, when "considering the evidence in the aggregate," including the strength of the government's evidence for *Carr* factors one and two, the Board's conclusion that the VA met its clear and convincing burden is supported by substantial evidence. *See Robinson v. Dep't of Veterans Affs.*, 923 F.3d 1004, 1020 (Fed. Cir. 2019).

We have considered Dr. Ginsberg's remaining arguments and find them unpersuasive.

CONCLUSION

For the foregoing reasons, we affirm the decision of the Board.

**AFFIRMED**