NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**STEPHANIE RUSSELL,**
*Petitioner*

**v.**

**DEPARTMENT OF THE AIR FORCE,**
*Respondent*

---

2024-1988

---

Petition for review of the Merit Systems Protection Board in No. AT-0752-21-0524-I-1.

---

Decided:  February 6, 2025

---

STEPHANIE RUSSELL, Crestview, FL, pro se.

JOSHUA DAVID TULLY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY.

---

Before LOURIE and HUGHES, *Circuit Judges*, and
GILSTRAP, *Chief District Judge*[1]

PER CURIAM.

Stephanie Russell appeals the Merit Systems Protection Board's final order, which sustained Ms. Russell's removal from her position at Eglin Air Force Base. Because the Merit Systems Protection Board's decision was in accordance with the law and supported by substantial evidence, we affirm.

I

Ms. Russell was a Logistics Management Specialist at Eglin Air Force Base in Florida. SAppx. 22.[2] In March 2020, shortly after the COVID-19 pandemic began, Ms. Russell asked her local union president if she was eligible for telework. The union president relayed this inquiry to Ms. Russell's immediate supervisor, Janice McGovern, who in turn relayed the request to a human resources advisor. The HR advisor recommended denying the telework request because, under Department of Defense policies, Ms. Russell had "various disqualifying circumstances in [her] work history[,] . . . including: (1) [Ms. Russell's] prior [Absence without Leave] [(]AWOL[)]-based suspensions, (2) current management attendance concerns requiring closer supervision, and (3) security issues/network access

---

[1]    Honorable Rodney Gilstrap, Chief Judge, United States District Court for the Eastern District of Texas, sitting by designation.

[2]    "SAppx." refers to the supplemental appendix submitted in connection with the Respondent's informal brief.

that could influence her ability to telework."[3] SAppx. 26–27.

The union president then requested that Ms. McGovern allow Ms. Russell to use paid Weather and Safety Leave (WSL). At that time, the agency had issued a "liberal policy granting flexibility to supervisors to approve WSL leave for employees who self-identified as being high-risk from COVID" based on risk factors, such as being age 65 or above or having a chronic health condition like "high blood pressure, heart disease, diabetes, lung disease, and asthma." SAppx. 27–28. Ms. Russell self-identified as being high risk from COVID-19 and requested WSL. Ms. McGovern initially refused to accept the request because Ms. Russell refused to provide a contact phone number, did not accept a government phone, and did not have access to government email because her network access had been suspended. Ms. Russell then provided a phone number, and Ms. McGovern granted Ms. Russell's WSL request on March 20, 2020. The approval letter indicated that Ms. Russell was being placed on WSL for 60 days, but that the approval "may be revoked at any time." SAppx. 28.

In April 2020, the Department of the Air Force began requiring that individuals on WSL provide a self-certification form and a verification of medical risk factors form, which must be filled out by a medical care provider. The verification of medical risk factors form was due within 30 days of the self-certification form. Ms. Russell expressed doubts about whether she could get an appointment with her care provider, and Ms. McGovern granted a 30-day extension. Ms. McGovern subsequently authorized two more 30-day extensions, extending the deadline to August 19.

---

[3] At the time Ms. Russell's telework eligibility was reviewed, her security clearance and her agency computer network access were suspended. SAppx. 27.

Throughout April and May, Ms. McGovern called Ms. Russell at least weekly to check on the status of the forms, but Ms. Russell never answered the phone and would take a day or two to return the calls. Ms. Russell stopped returning calls entirely in August despite Ms. McGovern's directives that Ms. Russell needed to answer calls directly and promptly return missed calls. Ms. McGovern consulted HR and then sent Ms. Russell a letter on October 9, 2020, directing Ms. Russell to either return the forms by October 19 or report for duty on October 20. The letter also stated that "all previously approved WSL would be converted to chargeable leave if [Ms. Russell] failed to provide the requested forms, and that she would be charged AWOL for any duty day after October 19 that she did not provide the required forms." SAppx. 32–33. Ms. McGovern received confirmation that the letter was delivered to the address she had on file for Ms. Russell, and Ms. McGovern left Ms. Russell several voicemails telling Ms. Russell that she had been mailed an "important packet with an October 19 deadline." SAppx. 33. Ms. Russell did not return the forms, nor did she report for duty on October 20.

Ms. Russell called Ms. McGovern on October 21 and said that she did not use that mailing address and refused to provide an updated mailing address, personal email, or any other way for Ms. McGovern to resend the letter. Ms. Russell also refused to let Ms. McGovern read her the letter over the phone. Ms. Russell then told Ms. McGovern that she wanted to use her annual leave, and Ms. McGovern denied the request. Ms. Russell did not report for duty, and Ms. McGovern continued to leave voicemails for Ms. Russell, which were not returned.

In early November, Ms. Russell provided the forms but sent them to the Office of Special Counsel instead of Ms. McGovern. Ms. McGovern called Ms. Russell and left a voicemail saying that she had not received the forms, and that Ms. Russell would remain in AWOL status until

Ms. McGovern received the forms. Ms. McGovern received the documents around November 30, and Ms. Russell was placed on WSL again.

On April 19, 2021, Ms. McGovern issued a Notice of Proposed Removal to Ms. Russell based on two charges: (1) Failure to follow Instructions with three specifications, and (2) AWOL. SAppx. 23. The three specifications for the failure to follow instructions charge were: (1) Ms. Russell's refusal to submit the WSL forms to Ms. McGovern, (2) Ms. Russell's failure to provide valid contact information where she could be reached while on WSL, and (3) Ms. Russell's failure to report to duty on October 20 or provide WSL forms on that date. SAppx. 23. The deciding official "sustained the charges and the penalty of removal." SAppx. 23.

After a two-day hearing, the Board sustained the removal. The Board sustained the first two specifications of the failure to follow instructions charge but did not sustain the third specification because the agency did not prove that Ms. Russell had actually received the instructions in the October 9 letter before the October 20 deadline. But because the agency proved two out of three of its specifications, the Board sustained the charge. The Board also sustained the AWOL charge.[4] The Board determined that the penalty determination was "within the parameters of reasonableness" and sustained the removal. SAppx. 44–45.

---

[4]   The Board did not sustain the AWOL charge for October 20 or 21 because the agency did not prove that Ms. Russell had received the October 9 letter but sustained the charge as of October 22 because Ms. McGovern told Ms. Russell during the October 21 phone call that the agency revoked Ms. Russell's WSL authorization and Ms. Russell would have to return to work until Ms. McGovern received the necessary forms. SAppx. 41

The Board also considered and rejected Ms. Russell's affirmative defenses. Ms. Russell first contended that the agency unreasonably delayed issuing the Notice of Proposed Removal beyond the 45-day goal set forth in the master labor agreement, but the Board concluded that the language in the agreement was aspirational and not mandatory, and that Ms. Russell "did not prove by a preponderance of the evidence that a more expeditious process or earlier notice of the proposed discipline would likely have produced any different outcome." SAppx. 45–46. Ms. Russell's second affirmative defense was a claim for whistleblower reprisal. The Board determined that an OSC complaint Ms. Russell had filed was a contributing factor because it was filed less than two years before her removal and the deciding official was aware of the claim. The Board considered the factors from *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999), and determined that while the agency had strong reasons for the personnel action, there was no basis to infer a retaliatory motive because the deciding official knew only of the existence of the complaint and not the contents, and there was an absence of comparators. The full Board affirmed the initial decision.[5]

---

[5]    The full Board clarified the initial decision's discussion of *Carr* factors two, the existence and strength of any retaliatory motive, and three, any evidence that the agency takes similar actions against employees who do not engage in protected activity. SAppx. 10–11. As to factor two, the Board concluded that the administrative judge erred by failing to consider a professional motive instead of just a personal one, but that review of the record did not reveal a professional motive. SAppx. 12–14. As to factor three, the Board concluded that the administrative judge erred in implying that it was Ms. Russell's burden to produce

Ms. Russell appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II

We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Perlick v. Dep't of Veterans Affs.*, 104 F.4th 1326, 1329 (Fed. Cir. 2024).

## III

Ms. Russell contends that the Board erred in several respects. We address each argument in turn.

First, Ms. Russell argues that she was not instructed to provide the WSL documents directly to Ms. McGovern. But to the Board, Ms. Russell "conced[ed] that she was directed many times to provide such documentation to Ms. McGovern." SAppx. 37. We may not consider the argument that Ms. Russell was not instructed to provide the forms for the first time on appeal. *See Kachanis v. Dep't of Treasury*, 212 F.3d 1289, 1293 (Fed. Cir. 2000) ("This court has long held that appellants may not raise issues on appeal for the first time.").

Second, Ms. Russell argues that she provided a valid address and phone number. We conclude that substantial evidence supports the Board's finding that Ms. Russell failed to follow instructions to provide valid contact information. SAppx. 39. The Board found that Ms. Russell refused to provide Ms. McGovern with her street address, personal email address, or any other means for the agency

_____

comparators, but because the administrative judge concluded the factor was neutral, there was no need to disturb the administrative judge's finding. SAppx. 14.

to send the October 9 letter. Ms. Russell also told the Board that she did not check the address she had originally provided to Ms. McGovern and that she did not answer her phone during business hours. SAppx. 39. The Board concluded that "valid" contact information "must establish a reliable means of actual communication between the supervisor and employee," and substantial evidence supports the conclusion that the contact information Ms. Russell provided did not meet this standard. SAppx. 39.

Third, Ms. Russell disputes the Board's finding that the deciding official did not have a retaliatory motive. Ms. Russell's argument here essentially amounts to a disagreement with the administrative judge's credibility determination, which is "virtually unreviewable" on appeal. *Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986). The Board thoroughly analyzed whether there had been any retaliation and found "no evidence of a retaliatory motive." SAppx. 13. Ms. Russell argues that Ms. McGovern improperly influenced the deciding official and that the deciding official knew more about the OSC complaint than he testified to, but the Board's factual findings contradict these assertions.

Finally, Ms. Russell makes several arguments that rely solely on the hearing testimony.[6] These challenges are primarily directed towards Ms. McGovern's testimony and allege that Ms. McGovern was disingenuous. Petitioner's

---

[6]    We recognize that under Rule 10(b)(2) of the Federal Rules of Appellate Procedure, an appellant must furnish a transcript of all relevant evidence, and we have previously held that appellants must furnish a *written* transcript or risk forfeiture of arguments relying solely on hearing testimony. *See Gonzales v. Def. Logistics Agency*, 772 F.2d 887, 890–91 (Fed. Cir. 1985). Nonetheless, in this case, we exercise our discretion to consider the substance of Ms. Russell's arguments.

Informal Br. 23–27. As previously discussed, an administrative judge's credibility determinations are virtually unreviewable on appeal, and Ms. Russell has not met the high burden required to disturb these determinations. *Hanratty v. Dep't of Transp.*, 819 F.2d 286 (Fed. Cir. 1987) (discussing that the petitioner needs to establish that the testimony must be "'inherently improbable or discredited by undisputed evidence or physical fact'" to undermine a credibility determination) (quoting *Hagmeyer v. Dep't of the Treasury*, 757 F.2d 1281, 1284 (Fed Cir.1985)). Additionally, we have reviewed the cited testimony and determined that Ms. McGovern's testimony is supported by substantial evidence.

V

We have considered Ms. Russell's remaining arguments and find them unpersuasive. For the reasons above, we affirm the Board's decision.

**AFFIRMED**

COSTS

No costs.